UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARTHA BENJAMIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-0029 (PLF) |
| | ) | |
| ARNE DUNCAN, | ) | |
| Secretary, Department of Education, | ) | |
| | ) | |
| Defendant.[1] | ) | |
| | ) | |

OPINION

This employment discrimination matter is before the Court on defendant's motion

to dismiss or, in the alternative, for summary judgment. The plaintiff, Martha Benjamin, brought

suit against her employer, the Department of Education ("DOE"), under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., alleging that she was discriminated

against on the basis of race (African-American) and gender (female). Ms. Benjamin also alleges

that the DOE retaliated against her for engaging in protected activity. After careful consideration

of the parties' papers, attached exhibits, and the relevant case law, the Court will grant

defendant's motion.[2]

---

[1]     The Court has substituted Arne Duncan, the current Secretary of the Department of Education, as the defendant in place of former Secretary Margaret Spellings, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2]     The Court had before it the following papers in connection with this motion: Defendant's Motion to Dismiss or in the Alternative for Summary Judgment ("Mot."); Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opp."); and Defendant's Reply in Support of the Motion for Summary Judgment ("Rep.").

I.  BACKGROUND

Plaintiff is an African-American woman.  She has worked for the Department of
Education since 1995 and has been employed as a GS-13 Financial Management Specialist in the
Federal Student Aid ("FSA") office since 1999.  See Mot., Defendant's Statement of Material
Facts as to Which there is No Genuine Dispute ("Def. Facts") ¶ 1; Opp., Statement of Facts ("Pl.
Facts") ¶¶ 1-2.  Plaintiff previously participated as an unnamed plaintiff in Grant v. Riley, a class
action brought by African-American employees at the headquarters of the DOE who were in the
competitive service at grades 11-15 anytime during the period of 1991 to 2000.  See Mot., Ex. 3,
Deposition of Martha Benjamin at 57-58; Order, Grant v. Riley, Civil Action No. 00-1595, Dkt.
No. 4 (D.D.C. July 7, 2000) (preliminarily certifying class pending fairness hearing).

On September 29, 2003, the DOE posted a vacancy announcement for a
Management and Program Analyst in the Operational Performance Analysis/Reporting and Intern
Review Group for a GS-14 position.  See Def. Facts ¶ 7; Pl. Facts ¶ 21.  Ms. Benjamin applied
for the position.  The initial processing of job applications was done by an automated personnel
system and computer software called EDHIRES.  See Def. Facts ¶ 11; Pl. Facts ¶ 25.  The
selecting official, Cynthia Reynolds, chose the questions to be used in the EDHIRES system
based on the position description and desired qualities of prospective employees.  See Def. Facts
¶ 11; Pl. Facts ¶ 24.  Through this system, applicants submitted credentials electronically and
answered a series of computerized questions.  Based on the answers, the EDHIRES system
generated a score for each applicant.  See Def. Facts ¶ 11; Pl. Facts ¶ 25.  Based on their
EDHIRES scores nine applicants were identified as qualified, including plaintiff.  See Def. Facts
¶ 12; Pl. Facts ¶ 34.  Plaintiff received a score of 100, while the applicant who was ultimately

selected, Anthony Magro (a white male) received a score of 95.31.  See Def. Facts ¶ 12; Pl. Facts ¶¶ 34-35.

Cynthia Reynolds, the selecting official for the vacancy, then interviewed the nine applicants identified as "qualified."  See Def. Facts ¶¶ 3, 13; Pl. Facts ¶ 36.  Ms. Reynolds asked all nine applicants the same interview questions, although she omitted certain questions during the interview with Mr. Magro, the ultimate selectee, because she had asked him those same questions in an interview conducted the previous day for a different position.  See Def. Facts ¶¶ 13-14; Pl. Facts ¶¶ 37-39.  Based on the interviews, Ms. Reynolds identified plaintiff, Mr. Magro, and a third applicant, Daniel Pollard (a white male), as the top three candidates for the position.  See Def. Facts ¶ 15; Pl. Facts ¶ 41.  Ms. Reynolds then spoke with Mr. Magro's supervisor and a former supervisor of plaintiff's before making her decision.  See Def. Facts ¶ 5; Pl. Facts ¶¶ 42-43.  Ms. Reynolds then chose Mr. Magro for the vacancy.  Ms. Reynolds was plaintiff's first line supervisor at the time of the selection.  See Def. Facts ¶ 3; Pl. Facts ¶ 51.

In February 2004, plaintiff contacted her second line supervisor, John Fare, to discuss her non-selection and other workplace issues.  See Def. Facts ¶ 24; Pl. Facts ¶ 72.  Thereafter, for the appraisal period of May 1, 2003 to April 30, 2004, Ms. Reynolds rated plaintiff as "successful" for all categories, the middle score of five possible levels of performance.  See Def. Facts ¶ 25; Mot., Ex. 13, Performance Appraisal at 1-2.

On January 7, 2008, plaintiff filed suit in this Court.[3]  She asserts four claims against the defendant: Count One alleges denial of promotion based on race and color; Count Two alleges denial of promotion based on gender; Counts Three and Four allege retaliation for plaintiff's prior protected activity.[4]

## II.  STANDARD OF REVIEW[5]

Summary judgment may be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v.

---

[3]    Based on the extensive transcripts from the EEOC hearing submitted as exhibits, it appears that plaintiff exhausted her administrative remedies with regard to many of her claims prior to filing suit.  Although defendant argues that plaintiff failed to exhaust certain of her claims, see Mot., Memorandum in Support ("Def. Mem.") at 28-29, 33-36, because the Court concludes that plaintiff cannot succeed on any of her claims, it need not parse which claims have been exhausted and which may not have been exhausted.

[4]    Although defendant makes various references to a hostile work environment claim in his briefs, nowhere does plaintiff allege such a claim.

[5]    Because defendant relies on material outside the pleadings, the Court will treat the motion as one for summary judgment.  See FED. R. CIV. P. 12(d).

Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  She is required to provide evidence that would permit a reasonable jury to find in her favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims."  Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

III. DISCUSSION

*A. Plaintiff's Claims of Discrimination on the Basis of Race and Sex*

Title VII provides, in pertinent part, that "[a]ll personnel actions affecting

employees or applicants for employment . . . in executive agencies . . . shall be made free from

any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16.

It is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or

otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex,

or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII also makes it unlawful for an employer

to retaliate against an employee for engaging in protected activity such as filing a charge of

discrimination.  See 42 U.S.C. § 2000e-3(a); see also Holcomb v. Powell, 433 F.3d at 901.

Absent direct evidence that an employment-related decision was discriminatory,

the claims must be analyzed under the burden-shifting framework of McDonnell Douglas Corp.

v. Green, 411 U.S. 792 (1973).  See Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009);

Moncada v. Peters, 579 F. Supp. 2d 46, 53 (D.D.C. 2008) (citing Barnette v. Chertoff, 453 F.3d

513, 515 (D.C. Cir. 2006)).  Traditionally, within that framework, a plaintiff must first establish a

*prima facie* case of discrimination.  See Moncada v. Peters, 579 F. Supp. 2d at 53 (citing

Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004)).  "Doing so creates a

rebuttable presumption of discrimination and 'triggers the employer's burden to produce

admissible evidence that, if believed, would establish that the employer's action was motivated

by a legitimate, nondiscriminatory reason.'"  Moncada v. Peters, 579 F. Supp. 2d at 53 (quoting

Teneyck v. Omni Shoreham Hotel, 365 F.3d at 1151).

Recently, the United States Court of Appeals for the District of Columbia Circuit clarified that a "district court need not — *and should not* — decide whether the plaintiff actually made out a *prima facie* case under McDonnell Douglas" at the summary judgment stage if the plaintiff "has suffered an adverse employment action, and [the defendant] has asserted a legitimate, non-discriminatory reason for the decision." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).

> Rather . . . in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [any statutorily prohibited factors]?

Id.

There can be no doubt that plaintiff's non-selection for the GS-14 position was an adverse employment action. See Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) ("An 'adverse employment action' [under Title VII] is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'") (citing Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). Defendant has proffered a legitimate, non-discriminatory reason for that decision — specifically that "[t]he selecting official, Ms. Reynolds, determined that the selectee was the best qualified candidate based on her evaluation of the applications, the interviews with the candidates, talks with the candidates' supervisors as well as her firsthand knowledge of the Plaintiff's performance." Def. Mem. at 14. As a result, plaintiff can survive summary judgment only by pointing to evidence in the record sufficient to convince a reasonable jury that the reasons proffered by the DOE are pretextual, and that the non-selection was actually

motivated by discriminatory intent.  See Jones v. Bernanke, 557 F.3d at 678; Brady v. Office of

the Sergeant at Arms, 520 F.3d at 494; Gonzales v. Holder, 656 F. Supp. 2d 141, 145 (D.D.C.

2009).  The Court therefore will proceed directly to consideration of that issue.

Plaintiff argues that the proffered reason is pretext for three reasons: (1) plaintiff's

qualifications were objectively superior to those of the selectee, see Opp. at 22; (2) certain other

events — namely, the elimination of a detail of plaintiff to the Department's Office of Chief

Financial Officer, the failure of Ms. Reynolds to read certain emails from plaintiff, and an

incident in which Ms. Reynolds told plaintiff to remove flowers from her desk — provide

background evidence of discrimination; see Opp. at 26-27; and (3) Ms. Reynolds has offered

conflicting explanations for not selecting plaintiff for the GS-14 position.  See Opp. at 27-28.

The Court will address each of these contentions in turn and explain why none of them creates a

genuine issue of material fact that must be resolved at trial.

Plaintiff argues that "there is ample objective evidence that Ms. Benjamin was

more qualified for the GS-14 position than the selectee."  Opp. at 22.  When an employer asserts

that a plaintiff was not promoted because she was less qualified than another candidate, a

factfinder may deem the employer's explanation pretextual if "a reasonable employer would have

found the plaintiff to be significantly better qualified for the job."  Aka v. Washington Hosp. Ctr.,

156 F.3d at 1294.  Nevertheless, because courts do not serve as "super-personnel department[s]

that reexamine[ ] an entity's business decisions," Holcomb v. Powell, 433 F.3d at 897 (internal

quotation marks and citation omitted), "[a] plaintiff asserting that an employer's explanation is

pretextual based upon comparative qualifications faces a formidable task."  Nyunt v. Tomlinson,

543 F. Supp. 2d 25, 39 (D.D.C. 2008).  "[I]n order to justify an inference of discrimination, the

qualifications gap must be great enough to be inherently indicative of discrimination." Jackson

v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (internal quotation marks and citation omitted).

For example, in Aka, the court of appeals found evidence of a qualifications gap sufficient to

raise a genuine question of fact where, *inter alia*, the plaintiff had nineteen years of relevant

employment experience, while the candidate who was hired had two months of relevant

volunteer work. Aka v. Washington Hosp. Ctr., 156 F.3d at 1296.

No such stark gap exists here. On the contrary, the record shows that the

qualifications of the plaintiff and the selectee were similar. The difference in their scores on the

initial computerized scoring system was nominal (plaintiff received 100 while Mr. Magro

received 95.31). See Def. Facts ¶¶ 11-12. Although plaintiff had more experience with GAO

and OIG audits than did Mr. Magro, see Opp. at 22 (citing Ms. Reynold's testimony in the EEOC

Hearing), the selectee had adequate knowledge of GAO and OIG audits. See Def. Facts ¶ 16. In

addition, acting as an audit liaison was only one of the duties required by the position. See Mot.,

Ex. 5, Vacancy Announcement. Even more important to the position were communications and

people skills and diplomacy. See Mot., Ex. 2(b), Reynolds's testimony at EEOC Hearing

("Reynolds's Testimony") at 296-300. The "court[] must defer to the employer's decision as to

which qualities required by the job . . . it weighs more heavily." Barnette v. Chertoff, 453 F.3d at

517. According to Ms. Reynolds, Mr. Magro's prior work experience demonstrated

"communicating and people skills" and that he had experience "dealing with higher-level senior

leadership" and "lenders and guarantee agencies outside of the department." See Def. Facts ¶

18; see also Reynolds's Testimony at 292-93, 296. Furthermore, the selectee came with a

glowing recommendation from his prior supervisor. See Def. Facts ¶ 18; Mot., Declaration of

Cynthia Reynolds ("Reynolds Decl.") ¶ 25.  In contrast, Ms. Reynolds knew from her own

experience supervising plaintiff that plaintiff did not have "the type of soft touch" necessary for

the position and that plaintiff "could be very blunt and did not negotiate well with others when

conflicts arose."  See Reynolds Decl. ¶ 26.  Others at the DOE agreed that plaintiff could be

difficult to work with.  See Def. Facts. ¶¶ 20-21.

Plaintiff disputes the characterization of her work style as lacking a "soft touch,"

see Opp. at 25, but this does not create a genuine issue of fact as to whether plaintiff was

significantly better qualified than the selectee.  The plaintiff cannot defeat summary judgment

simply by pointing to "small differences in the qualifications of the candidates" or identifying a

situation in which "the employer simply made a judgment call" with regard to which employee to

promote.  See Barnette v. Chertoff, 453 F.3d at 518.  In this case Ms. Reynolds made a judgment

call that Mr. Magro would be a better fit for the position than the plaintiff, and the Court will

defer to that decision absent a viable showing of pretext.

Plaintiff also attempts to show pretext by identifying certain events that, according

to her, provide background evidence of discrimination.  First, Ms. Reynolds terminated a detail

of plaintiff to the Department's Office of Chief Financial Officer in September 2003, which left

plaintiff with little work to do for several months.  See Pl. Facts ¶¶ 17, 19.  The defendant has

explained that this decision resulted from an internal reorganization, not from discrimination

based on race or gender.  See Reynolds Decl. ¶¶ 7-9.  Other than her own speculation, plaintiff

offers no reason for the Court to disbelieve this explanation.  Second, in January 2004, Ms.

Reynolds told plaintiff to apologize to co-workers for bringing flowers to the office (because the

co-workers were allergic to the flowers).  See Pl. Facts ¶ 70.  Third, plaintiff asserts that Ms.

Reynolds does not read emails that plaintiff sends to her. See id. ¶ 71. Such allegations regarding ordinary tribulations of the workplace do not raise an inference of discrimination, and the plaintiff cannot defeat summary judgment on these grounds. See Nuskey v. Hochberg, 657 F. Supp. 2d 47, 63 (D.D.C. 2009); Rattigan v. Gonzales, 503 F. Supp. 2d 56, 79-80 (D.D.C. 2007).

Finally, plaintiff argues that pretext can be inferred because Ms. Reynolds gave inconsistent statements regarding her selection decision. Specifically, plaintiff argues that Ms. Reynolds stated for the first time in her declaration that the selectee's former supervisor gave him a glowing recommendation. See Opp. at 24-25. Upon review of the record, the Court concludes that there is no basis to infer discrimination from this supposed inconsistency because Ms. Reynolds previously testified that she had spoken to Mr. Magro's supervisor as a final step before deciding who to hire. See Reynolds's Testimony at 289-90. One can infer from Mr. Magro's selection that during this conversation his supervisor had given him a positive recommendation. The Court concludes that there are no genuine issues of material fact with regard to plaintiff's discrimination claims.

*B. Plaintiff's Retaliation Claims*

To establish a *prima facie* case of retaliation, the plaintiff must first show "that [s]he engaged in a statutorily protected activity; (2) that [s]he suffered a materially adverse action by [her] employer; and (3) that a causal link connects the two." Jones v. Bernanke, 557 F.3d at 677; see also Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006); Holcomb v. Powell, 433 F.3d at 901-02. If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce a legitimate, nonretaliatory reason for its actions. See Jones v. Bernanke, 557 F.3d at

677 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). As already

discussed, the summary judgment framework was clarified by the court of appeals in Brady.

The analysis under Brady "appl[ies] equally to retaliation claims" as it does to discrimination

claims. Jones v. Bernanke, 557 F.3d at 678. In appropriate cases, however, summary judgment

still may be granted on the ground that the *prima facie* case plainly is deficient. See Von

Muhlenbrock v. Billington, 579 F. Supp. 2d 39, 43 (D.D.C. 2008) (citing Williams v. Dodaro,

576 F. Supp. 2d 72, 88, n.12 (D.D.C. 2008)).

As to the first prong, plaintiff participated in Grant v. Riley, Civil Action No.

00-1595 (D.D.C.), a class action brought by African-American employees at the headquarters of

the DOE who were in the competitive service at grades 11-15 during the period from 1991 to

2000.[6] This participation clearly constitutes protected activity under Title VII. Plaintiff therefore

has met the first prong of a *prima facie* case of retaliation.

As to the second prong, whether plaintiff suffered a materially adverse action,

plaintiff asserts that both her non-selection for the GS-14 position and her "successful"

performance rating for the period of May 1, 2003 to April 30, 2004 are adverse actions which

were motivated by retaliatory animus. See Opp. at 29.[7] The non-selection undisputedly is an

adverse action. With respect to her performance rating, the Court recognizes that adverse actions

in the retaliation context

---

[6]     Plaintiff was an unnamed class member. See Benjamin Dep. at 58. Grant v. Riley
settled in 2001. See Grant v. Riley, Civil Action No. 00-1595, Dkt. No. 19 (D.D.C. December 8,
2000).

[7]     Counts Three and Four identify only plaintiff's non-selection for a GS-14 position
as retaliatory activity, although in her brief plaintiff also argues that the "Successful"
performance rating was retaliatory.

encompass a broader sweep of actions than those in a pure
discrimination claim. Due to differences in the language and
purposes behind Title VII's retaliation and discrimination
provisions, the Supreme Court clarified in Burlington [Northern &
Santa Fe Railway Co. v. White], 548 U.S. 53 [(2006)], that the
requirements are distinct: Retaliation claims are "not limited to
discriminatory actions that affect the terms and conditions of
employment" and may extend to harms that are not workplace-
related or employment-related so long as "a reasonable employee
would have found the challenged action materially adverse." Id. at
64, 68.

Baloch v. Kempthorne, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). An action is adverse if it

likely would have "dissuaded a reasonable worker from making or supporting a charge of

discrimination." Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. at 60 (internal

quotations omitted). So the question is whether a performance rating of "successful" meets this

test.

Plaintiff's "successful" performance rating identified specific areas of plaintiff's

work that needed improvement and stated that plaintiff had generally improved her performance

during the period. See Mot., Ex. 13, Performance Review at 3. A "successful" rating put

plaintiff in the middle of five possible performance ratings. But even if the Court construes

plaintiff's evaluation as poor, rather than neutral, a poor performance evaluation typically is not

considered an adverse action, even in the retaliation context. See Baloch v. Kempthorne, 550

F.3d at 1199 ("[P]erformance reviews typically constitute adverse actions only when attached to

financial harms," because only then do they "affect [her] position, grade level, salary or

promotional opportunities."). Plaintiff asserts that the evaluation affected her salary because it

resulted in her not receiving an incentive award. See Opp. at 30. The only basis for this

assertion, however, is a Personnel Manual which states that "The [performance appraisal] system

13

is designed to recognize and acknowledge differing levels of performance and tie highly successful and outstanding performance to incentive awards." See Opp., Ex. 5, DOE Personnel Manual Instruction at 2. Plaintiff points to no specific incentive rewards she could have received or for which she was eligible, nor has she identified any other specific evidence of a lost award. Plaintiff's assertion that she would have received a monetary award as the result of a "Highly Successful" performance rating is too speculative to support the conclusion that her "Successful" performance rating was an actionable adverse action.

Finally, as to her non-selection for the GS-14 position, plaintiff still must satisfy the third prong of the *prima facie* case by showing a causal connection between her non-selection and her earlier participation in the Grant v. Riley class action to establish a *prima facie* case of retaliation for non-selection. Nowhere in her opposition to defendant's motion does plaintiff even attempt to do so. In addition, as defendant argues, approximately three years elapsed between the settlement in Grant v. Riley and plaintiff's non-selection in 2004. Such a significant time gap between admittedly protected activity and the asserted acts of retaliation fails to create an inference of retaliation. See Mills v. Winter, 540 F. Supp. 2d 178, 188 (D.D.C. 2008) ("courts have generally accepted time periods of between a few days and a few months . . . but have seldom allowed periods of more than a year to create the inference of a causal connection" sufficient to establish a *prima facie* case of retaliation) (quoting Moses v. Howard Univ. Hosp., 474 F. Supp. 2d 117, 125 (D.D.C. 2007)). The Court concludes that there are no genuine issues of material fact as to plaintiff's retaliation claim.

## IV.  CONCLUSION

For the reasons stated above, the Court will grant defendant's motion for summary

judgment.  An Order consistent with this Opinion will issue this same day.


\_\_/s/_____
PAUL L. FRIEDMAN
DATE: March 17, 2010                         United States District Judge